# UNITED STATES DISTRICT COURT
for the
### EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| WENGUI GUO<br>a/k/a Miles Kwok,<br><br>　　　　　Plaintiff,<br><br>　　- against -<br><br>YELIANG XIA,<br><br>　　　　　Defendant. | Case No. 1:18-CV-00174-LO-TCB |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S POST-TRIAL MOTION SEEKING JUDGMENT AS A MATTER OF LAW, REMITTITUR, OR A NEW TRIAL**

### I. Preliminary Statement

By this action, Plaintiff Wengui Guo ("Wengui") sought compensation for the damage he sustained by Defendant's admitted publication of defamatory statements about him, and to deter Defendant from continuing to engage in such behavior. After weighing the evidence presented at trial in the context of the stipulated instructions given by the Court, the jury agreed with Wengui and awarded him the precise verdict amount he sought. Now, in a desperate attempt to escape liability for his actions, Defendant makes this post-trial motion based upon blatant mischaracterizations of the facts and conspicuous avoidance of the prevailing law. Simply put, Defendant's motion is meritless and lacks any factual or legal support.

In adjudicating Defendant's motion, the Court must consider the evidence in the light most favorable to Wengui, the party who received the jury verdict. See Poulston v. Rock, 467 S.E.2d 479, 483 (Va. 1996). See also Government Micro Resources, Inc. v. Jackson, 624 S.E.2d 63, 74 (Va. 2006). Even if that was not the case, Defendant's motion would fail for

several reasons. Preliminarily, although he propounds legal standards to govern his motion, he fails to explicate any purported relationship between the facts and those standards. Additionally, Defendant fails to cite any case that could be construed as analogous to this matter in support of his position. When the cited standards and relevant case law are applied to the facts of this case, they favor Wengui, not Defendant.

Further, Defendant's anemic submission in support of his motion ignores rulings by the Court, disingenuously asserts false statements about the record, and makes no argument about any of his admitted defamatory statements. Indeed, the closest Defendant comes to making a meaningful (albeit unfounded) legal argument is his blanket conclusion that the jury's award "lacks a rational relationship to the evidence." That conclusion is patently untrue.

The jury heard testimony that Defendant admitted to making extremely offensive statements about Wengui to his hundreds of thousands of social media followers, published for anyone to see. His false factual statements included that "Wengui is a rapist who has been molesting people over many years, and on many occasions" and that Wengui is a communist spy and liar engaged in extortion, stealing, stalking, kidnapping, torturing, fraudulence, bribery, and blackmail. Defendant even stated that he would make a video of himself sexually molesting Wengui's wife, daughter, and personal assistant. The jury also heard testimony about how those alarmingly inflammatory statements injured Wengui's business interests, endangered his political asylum application, negatively impacted his human rights activism, damaged his reputation, and caused him considerable embarrassment and mental suffering.

As such, there clearly is a rational relationship between the evidence and the jury's award. For those reasons, as further expounded upon herein, it is respectfully submitted that Defendant's post-trial motion should be denied in all respects.

## II. Wengui Demonstrated He Was Damaged By Defendant's Defamatory Statements

"It is well settled that instructions given without objection become the law of the case and thereby bind the parties in the trial court and this Court on review." Owens-Illinois, Inc. v. Thomas Baker Real Estate, Ltd., 379 S.E.2d 344, 346 (Va. 1989). Such is the case even if jury instructions impose an inappropriate legal standard. See Owens-Corning Fiberglas Corp. v. Watson, 413 S.E.2d 630, 632 (Va. 1992).

Here, the appropriate standard was applied by Instruction 13 (Doc. 125, p. 14) when the Court instructed that the jury shall return a verdict for Wengui if he proved by the greater weight of the evidence that: 1) Defendant made an alleged statement, 2) it was about Wengui, 3) it was heard or seen by someone other than Wengui, 4) it was false, 5) Defendant made the statement: knowing it to be false; or believing it to be true, but lacked reasonable grounds for such belief; or acted negligently in failing to ascertain the facts on which the statement was based, and 6) Wengui sustained actual damage as a result of the statements. (Doc. 125, Instruction 15).

Defendant admitted to elements 1-3, and the jury heard the testimony of both parties, which included Wengui's repeated assertions that the subject statements were false, and repeated admissions by Defendant that he had no personal knowledge of, or a credible basis for, the veracity of the subject statements. Therefore, the jury reasonably concluded that Defendant

made his admitted false statements either lacking reasonable grounds for belief in their veracity, or negligently failing to ascertain the facts on which the statements were based.

The jury then heard abundant and unrefuted testimony about the damage Defendant caused by the publication of his defamatory statements. (Trial Tr. Vol, 1, p. 78, *et seq.*) Wengui testified regarding damage to his reputation, his embarrassment and his mental suffering. He explained how he lost tens of thousands of daily supporters (Trial Tr. Vol. 1 p. 78, lines 13-14). He detailed how his family now suffers constant harassment (Trial Tr. Vol. 1 p. 78, lines 15-18). He stated that he has had to live with his wife, daughter, and assistant's extreme depression caused by Defendant's statements (Trial Tr. Vol. 1 p. 79, lines 7-12). Wengui even described how some of his own family members have been so troubled by the defamatory statements that they have ceased communication with him (Trial Tr. Vol. 1 p. 79, lines 22-24).

Wholly ignoring the embarrassment and mental suffering his defamatory statements caused Wengui, Defendant limply attempts by his motion to assert that Wengui's reputation was unharmed by Defendant's repeated incendiary misstatements about him. To do so, Defendant strangely asserts that Wengui claimed he was the "black hand," or the organizer of recent protests in Hong Kong. In addition to being irrelevant, that assertion is clearly false. In fact, Wengui testified to the opposite – that "the media are being controlled by the Communist government, claimed that I was the black hand at the back of this movement in Hong Kong" (Trial Tr. Vol. 1 p. 62, lines 10-12). The context of the testimony obviously contrasts the way the communist Chinese media portrays Wengui (organizer of protests) and how defendant portrays him (a communist spy). Therefore, Defendant's singular argument as to why Wengui's reputation was not damaged is both deceptive and utterly specious.

In addition to reputational damage, embarrassment, and mental suffering, the jury heard testimony regarding how Defendant's defamatory statements interfered with Wengui's asylum application (Trial Tr. Vol. 1 p. 80, lines 23-25, p. 81, lines 1-2.) Wengui also testified about how his business interests were injured by Defendant's defamation of him. He discussed how potential projects with colleagues were lost (Trial Tr. Vol. 1 p. 78, lines 13-14), how female employees left his company and partnering companies with female executives ceased their partnerships with Wengui's business interests (Trial Tr. Vol. 1 p. 80, lines 3-9), and how because the defamation occurred at a time when Wengui was consulting for investment funds, they terminated that relationship based upon Defendant's statements, which caused Wengui financial damage (Trial Tr. Vol. 1 p. 80, lines 14-18).

Finally, Wengui offered testimony that Defendant's defamatory statements detracted from his human rights activism. As referenced above, his daily support declined significantly (Trial Tr. Vol. 1 p. 78, lines 13-14.), his media accounts were forcibly shut down (Trial Tr. Vol. 1 p. 79, line 3), and it became clear to him that his statements suffered reduced traction with his target audience because "nobody in China would believe that someone being called rapist, someone being called kidnapper, hooligan, money launderer, would actually bring them human rights and the rule of law or justice." (Trial Tr. Vol. 1 p. 82, lines 20-23.)

Therefore, the jury had a reasonable basis to conclude (in fact, they properly concluded) that Wengui sustained actual damage as a result of Defendant's widespread and repeated publication of defamatory statements about him.

### III. Wengui Demonstrated That Defendant Defamed Him, *Per Se*

Even had Wengui failed to prove he suffered "actual damage," he would still be entitled to recover damages from Defendant because Defendant published defamatory statements about him that were actionable, *per se*. See Great Coastal Express v. Ellington, 334 S.E.2d 846, 853 (Va. 1985). Alternatively stated, "even in the absence of any evidence of pecuniary loss, the damages which the injured party is entitled to recover may be substantial. This legal principle presuming injury to reputation, humiliation, and embarrassment, although not a factor 'in evidence,' is relevant and must be considered in any determination of damages based on defamation *per se*." Poulston, *supra*, at 483 (internal citations omitted).

Jury Instruction 14 (Doc. 125, p. 15), which was stipulated to, and is therefore law of the case (as set forth in Owens-Illinois and Owens-Corning, *supra*) clearly articulated for the jury the elements of defamation *per se*, *i.e.*, defamation falling into certain categories, including statements that imputed to Wengui the commission of a crime of moral turpitude, imputed to Wengui unfitness to perform the duties of employment or want of integrity in the discharge of the duties of employment, or prejudiced Wengui in his profession or trade.

"Crimes of moral turpitude are crimes that involve lying, cheating or stealing" (Shifflett v. Commonwealth, 2014 Va. App. LEXIS 12, 2014 WL 113646 (Va. Ct. App. 2014)), and Defendant admitted to stating that Wengui was a communist spy and liar engaged in extortion, stealing, fraudulence, and blackmail (among other crimes). Additionally, the Court ruled and explained to the Jury that both parties' occupation is the fight against the communist regime in China (Trial Tr. Vol. 1, p. 50, lines 22-25, p. 51, lines 1-2). Finally, Wengui testified that Defendant's defamatory statements imputed unfitness to perform the duties of his

6

occupation and that they in fact prejudiced him in his work. (Trial Tr. Vol. 1 p. 78, lines 13-14, p. 79, line 3, and p. 82, lines 20-23.) Therefore, the jury reasonably (and properly) determined that Defendant defamed Wengui, *per se*.

### IV. Although Unnecessary, Wengui Demonstrated Defendant Defamed Him With Actual Malice

In New York Times Co. v. Sullivan, 376 U.S. 254 (1964) the United States Supreme Court held that "the Constitution delimits a State's power to award damages for libel in actions brought by public officials against critics of their official conduct" and that in such actions "the rule requiring proof of actual malice is applicable." *Id.* at 283. The Supreme Court also held in the New York Times decision that a statement made with "actual malice" is made "with knowledge that it was false or with reckless disregard of whether it was false or not." That concept has been expounded upon throughout the years, including in Carr v. Forbes, Inc., 259 F.3d 273, 278 (4th Cir. 2001), in which the Court held that "a person need not be a public figure in all respects to trigger the actual malice standard" and that "[w]hen a person thrusts himself into the forefront of public debate, he is treated as a 'limited-purpose public figure' for purposes of comment on issues arising from that debate."

This Court found "that both [parties] are public figures for purposes of their being critics of the Communist regime in China. And that their social media followings and information that they have provided regarding their work as Chinese dissidents qualifies them for that limited field, that they are both public figures." (Trial Tr. Vol. 1, p. 26, lines 24-25, p.27, lines 1-4.) Defendant's admitted defamatory statements about Wengui are categorically outside the "limited field" for which the Court determined Wengui is a limited purpose public figure. Unfounded statements that Wengui is a rapist engaged in kidnap, torture, fraud, bribery, and

blackmail could not possibly be construed as statements relating to Wengui's work as a dissident or critic of the Chinese communist regime. Indeed, this Court already made such a determination, declaring that the referenced statements were "way beyond the purpose of the public figure [designation]." (Trial. Tr. Vol. 1, p. 32, lines 4-5, following a discourse beginning at p. 31, line 16.)

As such, Defendant's admitted defamatory statements are not subject to the New York Times "actual malice" standard. See Carr, *supra*, at 278. By his motion, Defendant slyly ignores that fact and the Court's ruling – attempting again to convince the Court that the "actual malice" standard should now apply to his admitted statements at issue. It should not. However, even if that heightened standard of proof did apply to any of Defendant's defamatory statements, the evidence provided a sufficient basis for the jury to reasonably determine that Defendant did act with actual malice when he published them.

"[B]ecause actual malice is a subjective inquiry, a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence." Spirito v. Peninsula Airport Comm'n, 350 F.Supp.3d 471, 481 (E.D. Va. 2018). During the trial, there was substantial testimony evidencing that Defendant lacked any personal knowledge or any credible basis for a belief that his defamatory statements were true. The Court even cautioned Defendant: "To the extent you have personal knowledge - you may respond. But you can't respond based on what you read. That's not personal knowledge" (Trial Tr., Vol. 1, p. 129, lines 5-8) and that "it's inadmissible. It's hearsay." (Trial Tr., Vol. 1, p. 130, line 6.)

Now, Defendant's entire argument regarding his reckless disregard for the veracity of his defamatory statements rests exclusively on what the Court had already explained

8

to him was inadmissible hearsay. Regardless, the jury heard Defendant's basis for his statements, over objection, and still determined that he published his statements with reckless disregard for their veracity, if not knowledge of their falsity, when they awarded punitive damages (discussed below).

Therefore, although Wengui need not have proven that Defendant acted with "actual malice" when he published the subject defamatory statements, the evidence the jury heard was that Defendant did recklessly disregard the falsity of his statements, and therefore they reasonably determined that Defendant did act with actual malice.

### V. <u>Wengui Never Limited His Actual Damages</u>

The jury instruction relating to the "actual damages" Wengui suffered was exceedingly clear, and because it was stipulated to, it is law of the case (<u>Owens-Illinois</u> and <u>Owens-Corning</u>, *supra*). It stated:

> If you find your verdict for Plaintiff, then in determining the amount of damages to which he is entitled, you may take into consideration all of the circumstances surrounding the statements, the occasion on which it was made and the extent of its publication, the nature and character of the insult, the probable effect on those who heard the statement, and its probable and natural effect upon Plaintiff's personal feelings and upon his standing in the community and in business.
>
> Your verdict should be for an amount that will fully and fairly compensate Plaintiff for:
>
> 1) any loss or injury to his business;
>
> 2) any insult to him including any loss of reputation and standing in the community, pain, embarrassment, humiliation, or mental suffering;
>
> 3) any injury to his reputation; and

9

    4) any actual, out-of-pocket losses that were caused by the statements.

<u>Instruction No. 17 – Plaintiff's Actual Damages</u>, Doc. 125, p. 20.

As set forth above, Wengui testified that he suffered damage because of Defendant's defamatory statements relating to each of the four enumerated categories of actual damages. By his motion, Defendant desperately avoids the true definition of "actual damages" and attempts to limit it solely to category 1 – "any loss or injury to his business." Defendant, however, cannot reform the law to avoid the verdict against him.

The fact that Wengui was unable to obtain business records located in communist China (where there is no dispute the government has frozen or confiscated his assets) that could demonstrate precise pecuniary business loss attributable to Defendant's admitted defamatory statements is a red herring. Defendant conveniently ignores the fact that in his own exhibit (Doc. 132-1, p. 2) Wengui concedes his inability to obtain such documents and therefore seeks a symbolic "$1. in actual damages <u>for business losses</u> stemming from Defendant's defamatory publications." (Emphasis added.) In accordance with the foregoing, Wengui never testified to any specific dollar amount of business losses – only that he suffered them. It was discussed and understood between the parties that Wengui would take this tack since prior to his service of the document annexed to Defendant's motion. Thus, Defendant stipulated to the final form of the jury instructions and verdict sheet, so his position now is duplicitous.

The simple fact is that "actual damages" contains three categories of loss other than business loss, and Wengui intentionally never gave the jury any evidence of precise pecuniary business loss. He did, however, testify at length about the subject statements and their insult to him, their "effect upon [his] personal feelings and upon his standing in the community

and in business," and the pain, embarrassment, humiliation, mental suffering, and injury to his reputation they caused. He then asked the jury, through counsel, "to compensate [him] for his reputational damages and to send the appropriate message to the Defendant to deter him from continuing to engage in [his] objectionable behavior" and stated that "a total award of compensatory, punitive, and presumed damages in the amount of $100,000 will send that message appropriately." (Trial Tr. Vol. 2, p. 224, lines 9-18.)

Examining all of the relevant facts critically leads to only one conclusion: that Wengui never limited his "actual damages" the way Defendant erroneously contends, and the jury's verdict was necessarily based not upon specified pecuniary business loss, but on the other more amorphous categories of "actual damages" enumerated in the Court's instruction to them, which were detailed in Wengui's testimony.

## VI. The Jury Properly Awarded Punitive Damages

Jury Instruction No. 22 informed the jury that they may award punitive damages if they found "by clear and convincing evidence that Defendant made the statements knowing the statement was false or made the statements so recklessly as to amount to a willful disregard for the truth" and "to punish Defendant for such actions and to serve as an example to prevent others from making such statements in the future." (Doc. 125, p. 25.)

As set forth above, Wengui (and Defendant) demonstrated that Defendant made his defamatory statements with at least a willful disregard as to their falsity. Therefore, the Jury awarded Wengui $20,000. for both Defendant's defamation and defamation *per se* of him, after awarding Wengui $30,000. in actual damages for both his defamation and defamation *per se* claims.

It is well settled that:

"[A] jury's award of damages may not be set aside by a trial court …unless the damages are so excessive…as…to create the impression that the jury has been influenced by passion or prejudice or has in some way misconceived or misunderstood the facts or the law…." Downer v. CSX Transportation, Inc., 256 Va. 590, 594, 507 S.E.2d 612 (1998). That being said, "a trial court will not set aside a verdict either as inadequate or as excessive merely because the court may have awarded a larger or smaller sum had it been the trier of fact." Downer, 256 Va. at 594 (citing Reel v. Ramirez, 243 Va. 463, 467-68, 416 S.E.2d 226, 8 Va. Law Rep. 2806 (1992)).

Stamathis v. Flying J, Inc., 389 F.3d 429, 441-442 (4th Cir. 2004).

Additionally:

Review of the amount of punitive damages includes consideration of reasonableness between the damages sustained and the amount of the award and the measurement of punishment required, The Gazette, Inc. v. Harris, 229 Va. 1, 51, 325 S.E.2d 713, 746, cert. denied, 472 U.S. 1032 (1985), whether the award will amount to a double recovery, Tazewell Oil Co. v. United Virginia Bank, 243 Va. 94, 113, 413 S.E.2d 611, 621 (1992), the proportionality between the compensatory and punitive damages, and the ability of the defendant to pay, Stubbs, 179 Va. at 200-01, 18 S.E.2d at 280.

Poulston, *supra*, at 484.

By his motion, defendant did not meaningfully address any of the aforementioned factors, and he is therefore estopped from attempting to do so on reply. His only argument, that actual damages were limited to $1, and therefore punitive damages should be limited to $0.66, is so far outside the scope of logical legal analysis that it can only be summarily rejected. Wengui testified about the considerable damage he sustained because of Defendant's actions. The amount of the award in that context is entirely reasonable. Additionally, Defendant's defamatory publications were highly offensive, disseminated to an extraordinary number of people, and in

some cases were threatening not only to Defendant, but also to his wife, daughter, and personal assistant. Based upon the foregoing, the award appears light in comparison to the measure of punishment that could have been appropriately assessed.

With regard to any question about double recovery, the Court in Poulston noted that it was not an issue because the relationship between the compensatory award ($10,000.) and the punitive damages ($25,000.) in that case was "not unreasonable or strikingly out of proportion." Id., at 484. In this case, the punitive award was less than the compensatory award. Thus, double recovery is not an issue here either.

In sum, the award sought by Wengui, and ultimately given by the jury, was modest in comparison to the damage Defendant intentionally inflicted upon Wengui by his defamatory publications.

## VII. Remittitur Is Not Appropriate

"Whether [a] verdict should be set aside as excessive is a matter of Virginia law." Stamathis, *supra*, at 438. And, "the Supreme Court of Virginia has repeatedly emphasized that the amount of a verdict is squarely within the jury's discretion, that it is inviolate when it is arrived at upon competent and proper instructions, and that all reasonable inferences must be drawn in favor of the verdict rendered when evaluating the appropriateness of the amount of a jury verdict. Showker v. Kratzer, 77 Va. Cir. 389, 389 (2009) (citing Richardson v. Braxton-Bailey, 257 Va. 61, 510 S.E.2d 732 (1999))." Clehm v. Bae Sys. Ordnance Sys., 2018 U.S. Dist. LEXIS 210793, *13, 2018 WL 6594612 (W.D. Va. 2018).

Additionally, "[w]hen a verdict is challenged on the basis of alleged excessiveness, a trial court is compelled to set it aside if the amount awarded is so great as to shock the conscience of the court and to create the impression that the jury has been motivated by passion, corruption or prejudice, or has misconceived or misconstrued the facts or the law, or if the award is so out of proportion to the injuries suffered as to suggest that it is not the product of a fair and impartial decision." Shepard v. Capitol Foundry of Va., 554 S.E.2d 72, 75 (Va. 2001) (quotations and citations omitted).

In this case, the jury instructions were not only competent and proper, but also stipulated to, and nothing about the verdict (which, it must be noted, also grants Defendant an award) could reasonably be said to shock the conscience or be based upon a misconception about the law, or be anything but the product of a fair and impartial decision. Indeed, Defendant never even argues as much. As set forth above, his only argument – which is specious, unsupported, and stated in conclusory form – is that the jury's award "did not have a rational relationship to the underlying facts and circumstances of the case."

It is respectfully submitted that, especially when viewing the verdict in the light most favorable to Wengui, and in the context of the highly inflammatory nature of Defendant's admitted defamatory publications, the number of people they reached, and the damage they caused, the verdict is not shocking, but decidedly fair and reasonable, and therefore Defendant's motion seeking remittitur should be denied.

## VIII. Defendant Is Not Entitled To Judgment

The law governing a Rule 50(b) motion for judgment as a matter of law is clear:

> When a jury has returned a verdict, the district court may grant a Rule 50(b) motion for judgment as a matter of law only if, viewing the evidence in a light most favorable to the non-moving party (and in support of the jury's verdict) and drawing every legitimate inference in that party's favor, the only conclusion a reasonable jury could have reached is one in favor of the moving party. If reasonable minds could differ, we must affirm the jury's verdict. In drawing all reasonable inferences in favor of the non-movant, a court may not weigh the evidence or assess the credibility of the witnesses.
>
> Pitrolo v. County of Buncombe, 407 Fed. Appx. 657, 659 (4th Cir. 2011) (internal quotations and citations omitted).

Defendant's own cited case law stands for the proposition that if Wengui "put forth more than a mere scintilla of evidence suggesting reasonable minds could reach different conclusions" the Court should deny Defendant's motion. (Doc. 132, p. 2). However, Defendant fails to attempt to address that standard by his motion. Based upon the testimony discussed at length herein, when viewing the verdict in Wengui's favor, it is impossible to determine that the only conclusion a reasonable jury could have reached is one in favor of Defendant. Therefore, it is respectfully submitted that the Court should deny Defendant's motion seeking a judgment as a matter of law.

## IX. No New Trial Is Warranted

Although the styling of Defendant's motion purports to seek relief under Fed. R. Civ. P. 59, he fails to propound any argument that a new trial is warranted. Regardless, a new trial could only be appropriate "if the verdict (1) is against the clear weight of the evidence, (2) is based on evidence which is false, or (3) will result in a miscarriage of justice" Nicholas v. Wal-Mart Stores, Inc., 33 Fed. Appx. 61, 67 (4th Cir. 2002).

As set forth herein, and based upon the evidence and testimony presented at trial, no rational argument can be made that the verdict is against the weight of the evidence, is based upon false evidence, or will result in a miscarriage of justice. Therefore, it is respectfully submitted that Defendant's motion should be denied.

## X. Conclusion

Defendant admitted to making every defamatory statement at issue in this action. He also admitted to doing so without having any personal knowledge about the veracity of the statements or any credible basis to believe the statements he made were true. The statements were both false and outside the public controversy for which the Court determined Wengui is a limited purpose public figure, and they were extremely offensive and inflammatory, and in some cases threatening. Wengui testified at length about how Defendant's admitted defamatory statements damaged him in various ways. His reputation was damaged, and he suffered mental anguish and humiliation. His relationship with his family was negatively impacted. His asylum application was endangered. His human rights activism was injured and his credibility with other political dissidents was diminished. His standing in business was hurt. His wife, daughter, and personal assistant also all suffered trauma based upon Defendant's statements, which detrimentally impacted Wengui.

The jury heard the foregoing facts, and within the framework of the stipulated jury instructions, awarded Wengui every penny that he asked for to compensate him for the damage defendant caused him and to deter Defendant from continuing to defame him. The award was intended to be, and ultimately was, modest in the context of the facts adduced at trial, but tailored to send the appropriate message to Defendant, *i.e.*, that he should cease his

defamation campaign against Wengui. Therefore, when the facts are applied to the law, the only equitable conclusion is to deny Defendant's post-trial motion in its entirety and allow the jury's verdict to remain undisturbed.

Dated: Washington, DC
        August 16, 2019

ZEICHNER ELLMAN & KRAUSE LLP

By: /s/ J. David Morrissy
    J. David Morrissy, Esq.
    VA Bar No. 93113
    400 7th Street NW
    Suite 506
    Washington, DC 20004
    dmorrissy@zeklaw.com
    Telephone: (202) 783-0316
    Fax: (212) 753-0396
    *Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this 16th day of August 2019, caused an accurate copy of the foregoing Memorandum in Opposition to Defendant's Post-Trial Motion to be filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to all counsel of record, including:

Henry Dennis, III, Esq.
VA Bar Number 40888
Dennis Stewart & Krischer, PLLC 2007
15th Street, North Suite 201
Arlington, VA 22201

/s/ J. David Morrissy_____
J. David Morrissy, Esq.
VA Bar No. 93113
Zeichner Ellman & Krause LLP
400 7th Street NW
Suite 506
Washington, DC 20004
dmorrissy@zeklaw.com
Telephone: (202) 424-2244
Fax: (212) 753-0396
*Counsel for Plaintiff*