Ning Ye, Esq.
135-11 38th Avenue, Suite 1A
Flushing, NY 11354
**Tel.: 718-308-6626;**
**Fax: 718-228-5816**
**Email: ynyale@aol.com**



AUG 27 2019

## IN THE U.S., DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA, ALEXANDRIA DIVISION

---------------------------------------------------------- )

|  |  |
|---|---|
| | ) |
| WenguiGuo aka Miles Kwok | ) Civil Action No. 18-cv-174 |
|     Plaintiff | ) The Hon. Liam O'Grady |
|         vs. | ) AmicusCuraer |
| YeliangXia | ) |
|     Defendant | ) |
| | \) |

---

## AMICUS CURIAE IN SUPPORT OF THE HONORABLE COURT'S JUDICIAL DISPOSITION WITH OR WITHOUT JURY VERDICT AND MEMORANDUM OF LAW THEREOF

1

# Table of Contents

**Tab Number:**          **Title of the Document submitted:**          **Page Number:**

I.      Procedural Posture                                                        2

II.     Amici's Corporate Interests Disclosure in Local Rule7.1                   3

III.    This Amici's Interests in this Instant Case;                              3

IV.     Amici's Proposal May Please to this Court for Helping Its Decision        7

V.      Discussion                                                               12

VI.     Juyr Should have Been Instructed to Consider Malice and Actual *Hurt* In
        Determining Dafamation and Defamation Per se before Awarding Monetary
        Damages                                                                  14

VII.    *Amici Prays that this Court to Consolidate the Manifested Judicial Wisdom in
        Its 12/08/2019 Brilliant Bench Ruling into the Case's Final Judgment with or
        without Jury Verdict*                                                     17

VIII.   Defendant is Entitled To Actual, Punitive and Incidental Damages         21

IX.     Conclusion                                                               22

X.   Certificate Of Service                                                      23

2

## IN THE U.S., DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA, ALEXANDRIA DIVISION

---------------------------------------------------------- )
                           )

| | |
|---|---|
| WenguiGuo aka Miles Kwok | ) Civil Action No. 18-cv-174 |
| Plaintiff | ) The Hon. Liam O'Grady |
| vs. | ) AmicusCuraer |
| YeliangXia | ) |
| Defendant | ) |

---

### AMI*CUS CURIAE* IN SUPPORT OF THE HONORABLE COURT'S JUDICIAL DISPOSITION WITH OR WITHOUT JURY VERDICT AND MEMORANDUM OF LAW THEREOF

      The undersigned, Ning Ye, Esq., an attorney in good standing of New York States and several other Federal Courts including 4th Circuit, and formerly a lead counsel pro hac vice in this instant case before being unreasonably excluded from continuing litigating the case, by the Hon. Theresa Buchanan, the Magistrate of this Honorable Court on May 24, 2019 for unknown motivation. He resigned on the afternoon of July 2, 2019 in the Courtroom 1000, after witnessing all his good preparation for trial evidence with shocking revelation was consciously or subconsciously buried under complicated situation.

      This undersigned Amici deeply appreciated the Court's disposition by deferral of the jury Verdict which may have involved enormous mistakes for the complicated legal issues in defamation case may have been beyond lay jurors' full comprehension, while such a pitfall may need the Court's making a balanced adjustment following the statutory (VA Anti-SLAPP) and case law guiding the judicial reasoning in the final disposition under complicated situation. Such brilliant judicial wisdom was also highlighted in the Court's 12/08/2018 Bench Ruling, rendered by the Honorable Liam O'Grady whose enlightening light of distinguished judicial wisdom also shed brilliant light in this Amicus Curaer.

      This undersigned, now acting as Amicee in the above-captioned case, respectfully submit this brief *amicus curiae* to pray for Leave of the Court to File this Memorandum because the outcome of this instant case crucially concerns vital

1

interests of the undersigned as well as the noble cause of freedom and democracy. He solemnly states as follows:

## I.    **Procedural Postures**

District courts have discretion whether to grant leave to file an amicus brief. Jin v. Ministry of State Sec., 557 F. Supp. 2d 131, 136 (D.D.C. 2008); see also Stuart v. Huff, 706 F.3d 345, 355 (4th Cir. 2013) (noting that non-parties have the option to file amicus briefs in district court proceedings and that such amici "often make useful contributions to litigation"*).

There is no Federal Rule of Civil Procedure that applies to motions for leave to appear as amicus curiae in district court, so district courts exercising this discretion often look for guidance to Federal Rule of Appellate Procedure 29, which applies to amicus briefs in federal appellate cases. See, e.g., Am. Humanist Ass'n v. Md.- Nat'l Capital Park & Planning Comm'n, 147 F. Supp. 3d 373, 389 (D. Md. 2015). Rule 29 provides that prospective amici must file along with the proposed brief, must file along with the proposed brief, a motion that states "the movant's interest" and "the reason why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case." Fed. R. App. Proc. 29(a)(3).

---

*This undersigned's useful contributions to this instant case may have been well established in the proceeding records.   He participated in the Jury Trial on both July 1st and 2nd as what Magistrate Buchanan arbitrarily designated as "counsel pro hac vice in advising capacity" with all frivolous restrictions, by helping the Court with "advices" on at least three critical occasions.   The following critical motions he drafted: Motion for Protective Order and Motion to Compel Plaintiff to Cooperate in Discovery and Deposition, were partially granted by the same Judge Buchanan on May 24, 2019.   Both his briefs in writing and his oral proffer in status conference before he was nibbed in mud on May 24, 2019, had helped all controversial issues get clarified or crooks made straight, even though the supermajority of his potential contributions to this instant case was unreasonably sealed, defused and compromised before and after May 24, 2019.

2

## II.     Amici's Corporate Disclosure under Local Rule

Amici curiae file this Corporate Disclosure Statement, as required by Rule
7.1(A)(1)(a) of the Local Rules for the Eastern District of Virginia. The undersigned
is a solo practitioner who does not have parent corporations or subsidiaries. Neither
has he held corporation owns 10 percent or more of any stake or stock in amici curiae.
Therefore, amici curiae have nothing to report under Rule 7.1(A)(1)(a) of the Local
Rules for the Eastern District of Virginia.

## III.     This Amici's Interests in this Instant Case

This Amici has vital interests in the final outcome of this instant case.   This instant
case should be won by landslide by Defendant should this undersigned be allowed to
litigate the case rather than being irrationally excluded from continuing litigating the
case after two critical motions, Motion for Protective Order and Motion Compel
Discovery on behalf of the Defendants, under his authorship, was partially granted by
the Hon. Theasa Buchanan on May 24, 2019.   The prevailing margin on the
Defendant's side is disproportionately greater: 33 competent trial exhibits with
ciber-link, separate CDs, well transcribed transcripts; certified English translation for
those transcripts in Chinese with certified English translation, with witness to lay
foundations in testimony in the courtroom (Xianmin Xiong/Aeronautical scientist and
IT expert/transcriber). Exhibits 1-16 Including shocking revelation to show what has
been Plaintiff since his youthhood. Plaintiff poorly prepared 10 trial exhibits
apparently not qualified for want of certified translation; without witness to lay
foundation; Plaintiff's prepare no testifying witnesses except for Party witness Guo
Wengui.

To abusively preclude this undersigned from litigating both the trial and deposition by
the Magistrate has actually rendered the Defendant defenseless because Magistrate
Buchanan arbitrarily hand-picked litigating counsel for Defendant Yeliang Xia under
Xia's protest and opposition was either compromised or incompetent to litigate the
case. The magic appeared partially based upon Morrissy-Dennis agreement without

3

Defendant Xia's prior knowledge or approval that Defendant's overwhelming supremacy of the trial evidence was turned to almost zero which 12 of Plaintiff's disqualified, incompetent trial exhibits were getting into Jury room at ease.

Given to Defendant's litigation counsel's incompetent or compromised defense; the Jury turned out the verdict to award Plaintiff $100,000.00 in total and to award Defendant now with zero supporting evidence, $10,000.00 verdict. This Honorable Court deferred the final judgment after the verdict.

Immediately after the Jury Verdict and before the final judgment, Plaintiff Guo using Guo Media to pronounce his "victory" in his first case of the kind and this undersigned was drowned in spits teasing and accusing this undersigned's disgraceful defeat.   For defending by rehabilitating his sense of honor, dignity and good will, the outcome of this case has big stake to this undersigned undoubtedly.

Since February 2018, Plaintiff Guo Wengui, a multi-billion dollar red business mogul with life-long affiliation with Chinese Secret Police apparatus, started honoring his loyalty pledge which he vowed to his "leaders" and his"organization"in the "People's Republic" under Communist reign in his August 26, 2017 correspondence of manifest allegiance, by launching dozens of litigations mostly targeting leading Chinese dissidents on exile, in numerous U.S. courts, Federal and state alike, from coast to coast, since February 2018, less than 6 months after his 08/26/2017 correspondence. Among all these cases, there a super minority of cases are not relevant to overseas based Chinese political opposition movement, apparently being utilized to camouflage his real intention to serve the agenda of Chinese communist secret police, his former and active boss.

Mr. Guo is virtually an illiterate in English language.   He is semi-illiterate even in written Chinese language. Bringing litigations by targeting all those big double digits dissidents, most of them are simply strangers to him, is not only a hard earned uphill

4

combat, but an extremely expensive job.   For instance, he boasted in video talk show that he spent more than $1Miollion in this instant case including PR costs, including $0.27million as attorney fees being paid to his counsel whose job was this poor that all the trial exhibits should have been striken for being virtually in all Chinese language without certified English translation.

The agenda of Plaintiff's abuse of this nation's judicial systems by chaining so many dedicative political dissidents into different courts is to, according to his own public video show, in order to bind their hands, create extreme hardship, and bankrupt them in the end, to rip them from continuing to fight for good fights.   Mr. Guo's unconventional tactics, taking great advantage of this nation's tolerance and inexperience in dealing with the worst evil of communism of Chinese character, apparently sending messages using unencrypted codes to his "leaders" and his "organization", to whom he vowed to use all his resources and influences, being earned with powerful back up from Chinese Secret Police, to help implement the dictatorship's global ambition under the code name of "China Dream". Plaintiff did not feel shy by proclaiming that he wanted to put his life as the gambling chip to his "leader" and "organization".

The reality is that many of the victims being covered by Guo's abusive law suits are not able to afford prohibitively legal fees.   For such litigations, normally the retainer may be no less than 50 thousands.

Being the spokesperson for Free China Movement, this undersigned finds that he himself may be an only litigating counsel who can help these victimized fellow dissidents in offering pro bono services to defend those indigent defendants under Mr. Guo proxy extra-territorial persecution by exploiting our nation's judicial institution.

Consequently, he represented the following abusive litigation victims either under extremely difficult financial situations:

Xianmin Xiong 151430/2018 (New York Supreme Court)

Baosheng Guo 151251/2019 (New York Supreme Court)

Yeliang Xia (18-174 with this Instant Court)

Yan Zhao (151251/2019, New York Supreme Court)

None of the above-listed defendants in Mr. Guo Wengui brought law suits claimed that they are able to pay standardized retainer according to the average market value, much less the accumulated hourly bill.    All of those defendants are dedicated dissidents as leading vocal critiques against totalitarian China. If this undersigned did not jump into the pool of hot water poured from Guo, all those cases were in derailed and dangerous situation, including Xia's case with this Honorable Court when I reluctantly took it in March 2019.    I help stabilized the case and "partially" won two decisive motions on May 24, 2019, pushing Plaintiff to drop his claims from $5,000,000 to $100,000, when Plaintiff has almost completely failed to turn over requested discovery materials, particularly this litigation materials Plaintiff inattentively leaked that he harbored the information in communist China, given to his alleged triggering cause for his asylum occurred in 2014 and all his targeting-dissidents law suits took place in or after February 2018. This undersigned is the person who first brought public alert on Plaintiff's agency/spy status issues into courtroom by catching up his 08/26/2017 Letter of allegiance and 16 among 33 competent trial exhibits,vis-à-vis Plaintiff's 10 defective, highly likely inadmissible ones, all with certified translation, well transcribed, with cyber link and DVD clipping, which undoubtedly established that the Plaintiff has been an elite secret police hit-man and career agent since youthhood.    The laundry list of these comprehensive trial exhibits were filed and docketed with this Court's ECF Broadcasting system on May 23, 2019.    Had these shocking and explosive revelation by these trial exhibits been presented before the Jury in publicly accessible open trial, Plaintiff would have

been over in addition to $12Million Verdict Defendant is praying in his counterclaim which was survived with this Honorable Court's Blessing. Defendant had never brought down his counterclaim amount with land-sliding supremacy in overwhelming magnitude.

Therefore, this undersigned 's interests in the outcome of this case is also related to the great and weighty stake he has shouldered with his victimized colleagues in advocating China's Political Opposition Movement which is momentarily under the constant attacks by Chinese Secret Police's extraterritorial operation via its such such aggressive, tireless front runner with limitless financial resources suspiciously being constantly laundered in his cash reservoir in the United States from abroad as Plaintiff Wengui Guo*.

## IV.  Amici's Proposal Means to Help This Honorable Court to Render Its Final Decision

Alleged Defendant's defamation about publicly dissimilating scandals about his raping or repeated raping of his female employees, had  been already publicly available from New York City Supreme Court's publicly accessible docketing system, namely, "eCourts" information, public mass media, or being confirmed as true by Guo's pleadings. Defendant's citing or quotation of these globally circulated newscast should be shielded by these main stream news media's reports under the 1$^{st}$Amendment.  These news media report presenting graphic picture of whens, wheres, whats, hows, how oftens, about Plaintiff's "repeated rapes" against his female employees, has extended their safeguards and immunity to Defendant, under the VA "AntiSLAPP Law" of VA Code 8:1, and New york Civil Rights Law Section 70-72.  The fact that Plaintiff was unhurt by these newscast of his sexual scandals can

---

*In his testimony under oath in both deposition and live testimony in the Court, Plaintiff humbly, yet fraudulently testified that he has zero assets except for loans by verbal loaning contract for billions lending to him.   Should he be really penniless, an involuntary bankruptary will be filed for him given to his multimillion dollar litigation triggering the same for counterclaims.

also be seen in Mr. Guo's answer to Mr. Dennis' cross examination: Have sued these news media which accused you for rape? Mr. Guo's answer to the Court is a big "No-no".

As the outcome of numerous fatal mistakes being caused by Magistrate Judge's May 24, 2019 Order regarding the order's insane second half, the jury verdict was rendered in darkness from failure of due process concerning trial evidence introduction. The jury's awards of $30,000 of actual damage does not have evidentiary support according to VA precedents given to zero evidence presented at trial establishing actual injury in a case involving a public figure. Actual proof by specificity is required to form monetary award for a public figure where the Honorable Court finds and instructed that Plaintiff is a public figure; Plaintiff's own live testimony did not address his actual harm being suffered from Defendant's alleged "defamation".

The jury's awards of $20,000 of punitive damage is even floating far away from any evidentiary and legal basis:

Defendant's exchange of fighting words mentioning his desire to have sex with Plaintiff's wife and daughter and female employees, if true, tarnished Defendant's own public image and reputation as a professor; If there were no qualified immunity in the courtroom, Plaintiff's repeatedly playing of Defendant's such self-defaming message, would be a defamation to ruin Plaintiff social statue against the Plaintiff himself. Therefore, it is not a defamation at all, much less defamation *per se*.

On the contrary, Plaintiff's triggering defamatory language that he wants to Fxxx Defendant's wife, daughter and mother, appears defamation per se, because Plaintiff's broadly publicized dirty message, according to Professor Xia's in court testimony, which was "allowed in" by this Honorable Judge after Mr. Ye, this undersigned, presented clarification to the Bench, involved such defamatory information that Defendant's wife is a prostitute, which is defamation per se in the precedents of almost any and every jurisdiction, including the State of Virginia.

8

Additionally, Plaintiff, an undisputedly a public figure, actually presented to the jury and to this Honorable Court, with zero itemized and specific evidence to prove harms and damages on any factual basis leading to punitive damages. Therefore, this Honorable Court may need to set aside the Jury's verdict regarding the monetary damages pursuant to Virginia legal authorities into the amount equals to what Plaintiff's had specifically proven to the Court. That would be more or less, the amount of $0.00. Alternatively, this Court may also consider to award Plaintiff with such symbolic monetary award as $1.00, to entertain what Plaintiff voluntarily proposed on May 31, 2019, after this undersigned's hard-earned winning of two critical motions on May 24, 2019, in response to Judge Buchanan's Order for Protective Order in favor of Defendant and Order to Compel Plaintiff followed with his continuing failure to observe the May 24, 2019 Order to Compel. A Court awarding $1.00 to a Defamation case Plaintiff and/or counter-plaintiff has been very common in this jurisdiction and the sister jurisdictions.

Defendant's other message addressing the Plaintiff, such as citing other mainstream media's reporting Rui Ma v. Guo to say Plaintiff is a "rapist" is covered by privileged fair reporting immunity as VA's anti-SLAPP law, which empowered the Defamation Defendant to immediately terminate the case and to claim for fees and cost; Therefore, it is not defamation at all, much less defamation *per se*. The Jury did not understand such legal distinction.

Defendant's message implicating Plaintiff's being a spy in affiliation with Chinese Secret Police has the defense of actual truth according to the featured reports of the Wall Street Journal and the CNN. Plaintiff has also the defense of "opinion".

Jury's awarding these monetary damage in an absolute absence of "specific proof of damages", as a technical mistake in head's on collision course against Virginia common law given to Plaintiff's public figure status, is partially contributed by technical impasse of Defendant's submission of "Amended Jury Instruction" , "Objection to Plaintiff's Jury Instruction", being timely authored by this undersigned.

9

Defendant's submission of Trial Exhibits with certified transcript, certified translation and itemized CD back-up, with accurate one-touch cyber-links, and testifying live witness to lay foundations by Witness Mr. Xianmim Xiong, an Aeronautical scientist and IT specialist, together with many other proposed filings, were blocked in the roadblock before trial for unknown reason.

Due to the fact that the Jury also evenly found that Plaintiff's had also committed defamation against Defendant, this Court may need to rule that each party pays his own fees and cost.  This Court had demonstrated its Judicial wisdom to have accepted Defendant's defense that the essence of this disputes was two parties' exchanging of fighting words one another in the air, neither was a silent recipient in such exchanges.

Though as a common sense issue shown by the records, this case is about claimed defamation and defamation per se, is no more than an exchange of fighting words between two actors, neither is absolutely a silent recipient.  The Defendant's published speech falls into a category of protected opinion, which appears to be pre-existing, media covered, generalized information globally circulated, against the Plaintiff, such as calling Plaintiff as a "spy", or a "rapist", or mere fighting words, such as Professor Xia's invitation of Plaintiff's female relatives and employees, therefore, is shielded directly by *VA Code* § 8.01-223.2 and also being shielded directly or derivatively by our nation's 1st Amendment.  Defendant's speech or fighting words, did not raise to the level of defamation, much less up to the level of defamation per se.

On the other hand, Plaintiff's defamatory message globally circulated against Defendant, involving baseless and fraudulent charges of Defendant's contagious diseases "transmitted to many women", as **being caught by this Honorable Court in its landmark Bench Ruling dated December 18, 2018**, and other more serious defamatory messages and covert acts, were specifically designed and made up by the Plaintiff narrowly targeting Defendant alone, had never been pre-existing, or covered

10

by the mass media before, were not shielded by the 1st or by VA Code *VA Code* §
8.01-223.2. Such a critical information were not included in the Court read Jury
Instructions mostly based upon the Plaintiff's version.

What Defendant prepared an Amended Jury Instruction did not go through like
abundance of Defendant's other filings such as his pretrial exhibits (backed up with
33 CDs) and pretrial motions, oppositions and memoranda thereof, for unknown
reasons, which may involve disagreement on defense tactics among the team
members. The Jury instruction being adopted by the Court, *which was not fully
discussed item by item before the pool of Jurors were called in.* Jury instruction had
failed to include the VA law and 1st Amendment safeguard on speech. VA type of
limited "Anti-SLAPP law", *i.e., VA Code* § 8.01-223.2. Immunity of persons for
statements made at public hearing or communicated to third party provides such legal
shield in the light of our nation's Constitution:

Plaintiff's presentation of a few clippings of so-called Defendant's defamatory
message in short-cut in pure Chinese language without certified transcribing
certification; with no certified English translation, with no proof of foundation
(Plaintiff did not prepare for detached testifying witnesses to lay foundation in
examination), are all disqualified and thus invalid.   None of these trial exhibits
should have been allowed to pass should have this undersigned been in place to
litigate, should his litigating counsel's function not have been "sterilized" by
Magistrate Buchanan.

It is not improper, on the contrary, it will be highly acclaimed as a monument
exemplifying our nation's judicial wisdom, if this Court walks an inch forward, by
awarding fees and cost to Defendant, given to Plaintiff's apparently suspicious foreign
agent mission, as being reported under the headline of the Wall Street Journal on July
22, 2019, to mobilize double digits of similarly frivolous legal actions to oppress,
silence and bankrupt all prominent and leading figures in opposition movement from

11

China by abusing our nation's judicial systems from coast to coast.  Doing so may also likely be in the best interests of the Plaintiff now in defensive position facing the growing wave of well established,  reasonable suspicions about his real role in the United States.*

V.   **Discussion**

The Jury Instruction has failed to provide the Jury with the guideline of Va immunity for an actor's opinion repeating publicly concerned matter should be privileged:

In Alexandria Gazette Corp. v. West, 93 S.E.2d 274, 279 (Va. 1956), the Virginia Supreme Court stated that "[t]he publication of public records to which everyone has a right of access is privileged, if the publication is a fair and substantially correct statement of the transcript of the record." Alexandria Gazette Corp. v. West, 93 S.E.2d 274, 279 (Va. 1956)

The Jury was entitled to hear such instruction. Defendant's repetition in his twitter by citing the mainstream mass media's highly profiled, globally circulated newscast about Plaintiff's being both "rapist" and Chinese Spy" had virtually been a privileged fair report from the Court Records, such Ma Rui v. Wengui Guo, and SV v. Eastern Profits.  Defendant's protected opinion received such derived privilege and is a protected opinion, not defamation, much less defamation *pro se.*

---

*In response to the Wall Street Journal's Headline featured reports casting reasonable suspicion on Plaintiff's real role in the United States as a spy for the PRC's secret police apparatus, Plaintiff's spokesperson argued to the public that Mr. Guo Wengui is a political dissidents, rather than a Chinese communist spy.  If Guo's real agenda is to distribute his assets from the alleged reservoir of the Chinese secret police Tsar as Ma Jian and Zhou Yongkang, through such unconventional means as of massive scale of frivolous actions against real dissidents,  awarding attorney fees to every and all pro-democracy activist-defendants in all actions may shed some light to substantiate his self-conceited "political dissident" stories. Doing so will therefore definitely be in his best interests to bleach himself from suspicions.

12

Through discovery, and reading Plaintiff's Complaint of frivolity, what Plaintiff charged against Defendant is no more than *opinion*, which are protected by 1st Amendment. In this jurisdiction, "to protected speech is substantial, 'not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications.'" McConnell, 540 U.S. at 207 (quoting Virginia v. Hicks, 539 U.S. 113, 120 (2003)). "A court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494 (1982).

Additionally and noticeably, the VA type of limited "Anti-SLAPP law", *i.e., VA Code § 8.01-223.2.* Immunity of persons for statements made at public hearing or communicated to third party provides such legal shield in the light of our nation's Constitution:

> A person shall be immune from civil liability for a violation of § 18.2-499, a claim of tortious interference with an existing contract or a business or contractual expectancy, or a claim of defamation based solely on statements (i) regarding matters of public concern that would be protected under the First Amendment to the United States Constitution made by that person that are communicated to a third party or (ii)…

The only exception of the law is the standard "malice" applicable to "public figures: "The immunity provided by this section shall not apply to any statements made with actual or constructive knowledge that they are false or with reckless disregard for whether they are false."

With flooding coverage about Plaintiff's being a communist spy and as a "rapist" by the mainstream mass media worldwide, Plaintiff, a public figure, has never been able, or had ever attempted to prove such globally covered by high profile media coverage, was "false". Therefore, Defendant's malice will never be able to establish.

Most importantly, Defendant, one of the large group of similarly victimized by Plaintiff's SLPP conspiracy in abusing our nation's judicial institution are entitled to Virginia State's "Anti-SLAPP" legislation, even being relatively weaker in comparison to its peers in such State as of Nevada and California, *is entitled to VA Anti-SLAPP Legislation, by being awarded with immediate dismissal of Plaintiff's SLAPP Type Defamation suit, and beinginstantly awarded with fees and cost*

13

*pursuant to VA Code* § 18.2-499 **(B):**

**"Any person who has a suit against him dismissed pursuant to the immunity provided by this section may be awarded reasonable attorney fees and costs."**

VI.     **Juvr Should have Been Instructed to Consider Malice and Actual *Hurt* In Determining Dafamation and Defamation Per se before Awarding Monetary Damages**

According to Virginia Common law, in a defamation and defamation per se case, a public figure needs to prove Defendant's Malice, Defendant's *"hurts"* upon Plaintiff's Business and actual monetary damages in order to prove "Defamation" and Defamation per se, and deliberating and determining monetary damages.

In Virginia, courts look at the following factors in determining whether a plaintiff is a limited-purpose public figure:

Whether the plaintiff had access to channels of effective communication;

Whether the plaintiff voluntarily assumed a role of special prominence in a public controversy;

Again, not every defamatory statement, however, is "necessarily hurtful" to a plaintiff's business and touches the plaintiff in his special trade or occupation.

To be actionable without proof of "special damages", we have held that the words must contain an imputation that is "necessarily hurtful" in its effect upon plaintiff's business and must affect him in his particular trade or occupation. James v. Haymes, 160 Va. 253, 261-62, 168 S.E. 333, 336 (1933). Accord, W. Prosser, Torts Sec. 112, at 758 (4th ed. 1971) ("defamation of a kind incompatible with the proper conduct of the business, trade, profession or office itself) — There must be a nexus between the content of the defamatory statement and the skills or character required to carry out the particular occupation of the plaintiff. Restatement (Second) of Torts Sec. 573, Comment e (1976). For example, because an attorney is required to adhere to the disciplinary rules, charging an attorney with unethical conduct is defamatory per se. Carwile, supra, 196 Va. at 8, 82 S.E.2d at 592. The words themselves must necessarily be damaging to the attorney in his profession.

Whether the plaintiff sought to influence the resolution or outcome of the controversy;

Whether the controversy existed prior to the publication of the defamatory statements; and

14

Whether the plaintiff retained public figure status at the time of the alleged defamation. Carr v. Forbes, Inc., 259 F.3d 273, 280 (2001)

Again, not every defamatory statement, however, is "necessarily hurtful" to a plaintiff's business and touches the plaintiff in his special trade or occupation.

To be actionable without proof of "special damages", we have held that the words must contain an imputation that is "necessarily hurtful" in its effect upon plaintiff's business and must affect him in his particular trade or occupation. James v. Haymes, 160 Va. 253, 261-62, 168 S.E. 333, 336 (1933). Accord, W. Prosser, Torts Sec. 112, at 758 (4th ed. 1971) ("defamation of a kind incompatible with the proper conduct of the business, trade, profession or office itself) — There must be a nexus between the content of the defamatory statement and the skills or character required to carry out the particular occupation of the plaintiff. Restatement (Second) of Torts Sec. 573, Comment e (1976). For example, because an attorney is required to adhere to the disciplinary rules, charging an attorney with unethical conduct is defamatory per se. Carwile, supra, 196 Va. at 8, 82 S.E.2d at 592. The words themselves must necessarily be damaging to the attorney in his profession.

Here in this instant case, Plaintiff is a textbook type public figure, while he admitted in both his Complaint and in his sworn statement in Deposition that he is such an *unprecedented whistleblower* who *single-handedly* launched battles to public awareness to Chinese ruling bloc's summit level, and has been a high profile speaker to public under the media limelight. According to Virginia Common law, there as here, that one who **"voluntarily injected himself into a public controversy "in order to influence the resolution of the issues involved." Is a public figure.** *Gertz v. Robert Welch, Inc.,* **418 U.S. 323, 345, 94 S.Ct. 2997, 3009, 41 L.Ed.2d 789 (1974)**Again, "...a widely-published scientist and *self-styled whistleblower* who claimed the National Cancer Institute (NCI) had reversed its official position on whether a pesticide was carcinogenic. Reuber v. Food Chemical News, Inc., 925 F. 2d 703 - Court of Appeals, 4th Circuit 1991

As a well proven public figure, though being smelly and notoriously infamous for committing frauds and all other such controversies as active involvement in suspicious foreign espionage, massive international money laundering, etc., Plaintiff

needs to prove his claim for itemized damages, while Plaintiff has completely failed to do so.

The Jury was failed to hear that "the award of damages without proof of "actual injury" was condemned as "invit[ing] juries to punish unpopular opinion rather than to compensate individuals for injury sustained by the publication of a false fact". Id. on the basis of Gertz(_Gertz v._ _Robert Welch, Inc., 418 U.S. 323, 345, 94 S.Ct. 2997, 3009, 41 L.Ed.2d 789 (1974)_—added), we vacated an award of punitive damages entered against a publisher where the award was based upon a finding of common-law malice, and held that it was necessary to show knowledge of falsity or reckless disregard for the truth by "clear and convincing evidence" before punitive damages could be awarded. Fleming v. Moore, 221 Va. 884, 899 (1981), citing UNITED STATES Newspaper Publishing Corp. v. Burke, 216 Va. 800, 805, 224 S.E.2d 132, 136 (1976).

Even for a private figure, an "Awards must be supported by competent evidence, although it is not necessary that the evidence assign a dollar value to the injury." Gertz v. Robert Welch, Inc., 418 U.S. 323, 350 (1974) The Jury instruction did not give such clear cut instruction to govern the award deliberation.

The Jury Instruction has failed to provide the Jury with the guideline of Va immunity for an actor's opinion repeating publicly concerned matter should be privileged: In Alexandria Gazette Corp. v. West, 93 S.E.2d 274, 279 (Va. 1956), the Virginia Supreme Court stated that "[t]he publication of public records to which everyone has a right of access is privileged, if the publication is a fair and substantially correct statement of the transcript of the record." Alexandria Gazette Corp. v. West, 93 S.E.2d 274, 279 (Va. 1956)

Defendant's repetition in his twitter by citing the mainstream mass media's highly profiled, globally circulated newscast about Plaintiff's being both "rapist" and Chinese Spy" had virtually been a privileged fair report from the Court Records, such Ma Rui v. Wengui Guo, and SV v. Eastern Profits. Defendant's protected opinion received such derived privilege and is a protected opinion, not defamation, much less defamation _pro se_. Therefore, the Jury should have been properly instructed that the Defendant is legally exempted from reporting such a court records under Virginia privileged fair report. While Plaintiff's outcry for allegedly being defamed showed its disgusting hypocrisy while what happened is essentially two persons exchange of fighting words through social media while the harm inflicted by Plaintiff's words plus actually proceeded unlawful, unethical conspiracy wire fraud, obstructing of justice in tampering witnesses by corruptive bribery in order to incriminate the Defendant in scarlet type crimes as the discovery

evidence showed in this Honorable Court's 12/31/2018 Ruling and opinion rejecting Plaintiff;s

Motion to dismiss counterclaims. .

Through discovery, and reading Plaintiff's Complaint of frivolity, while these frivolous presentation was given to the Jury without fair instruction of distinction between defamatory message and protected opinion. It appeared what Plaintiff charged against Defendant is no more than *opinion*, which are protected by 1ˢᵗ Amendment. In this jurisdiction, "to protected speech is substantial, 'not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications.'" McConnell, 540 U.S. at 207 (quoting Virginia v. Hicks, 539 U.S. 113, 120 (2003)). "A court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494 (1982).

It appears that it is the Court, rather than Jury, who is the better arbiter to differentiate these legality/technicality differences.      Therefore, this undersigned highly acclaims and deeply appreciates the Court's deferral of final disposition after Jury Virdict.

Though any party may argue that a Jury may need to hear such detailed instruction. For a legally complicated case as of defamation and defamation per se, the best solution is bench trial, rather than jury trial because it involves too much subtlety of legal issues governed by both statutory law and case law, which may not be within lay persons' comprehension. Therefore, a jury trial result should be adjusted and amended by Court. Therefore, this Amici highly appreciated the Honorable Court's such wise disposition by deferral of its judgment and making the door open for both parties' counsel to furnish the Court with legal opinion.    In some cases, the Court even invites the American Bar Association to provide advisory opinion in complicated case.

VII.    **Amici Prays that This Court Consolidate the Manifested Judicial Reason in Its 12/08/2018 Brilliant Bench Ruling into Its Final Judgment w/ or w/o Jury Verdict**

Amici Prays that it may be critical for this Honorable Court to consolidate its *own* Manifested Judicial wisdom in Its 12/08/2018 Brilliant Bench Ruling into Its Final Judgment with or without Jury Verdict.   The Court's 12/08/2018 Finding that Plaintiff had committed inescapable torts of common defamation and **defamation** *per se* should the Court quoted words have been publicized against the Defendant tarnishing publicly that Defendant had contagious disease and having transmitted to many women.   In Plaintiff's response to Defendant's Request for Discovery, in Plaintiff's sworn testimony under oath and Defendant's in-court testimony under oath, Defendant admitted for all the records that he actually made such statement in addition to his admission under oath regarding his public statement that Defendant Xia sexually assaulted a female student in Beijing University.    Though he denied his wire fraud in procuring fraudulent incrimination targeting Defendant Xia in conspiracy with others among whom a Female Restaurant Owner.

Plaintiff knew that his public announcement that Defendant Xia had Contagious disease and he transmitted such STD to many women is baseless: In his response to Defendant's discovery request seeking for evidence to Defendant's STD and for Defendant's Transmission to many women, Plaintiff's answer is plainly "NO", neither did Plaintiff present any evidence before the Jury that his public pronouncement on Defendant's "STD" followed with his "transmission" to "many women".   .

Only for these portions of Plaintiff's party admission, Plaintiff had clearly committed defamation and Defamation *per se*, a textbook Defamation *per se* in this jurisdiction. Due to the fact that Defendant's Amended Jury Instruction being drafted by this undersigned was not transmitted to this Court for unknown technical impasse, the Jury failed to have found it is Plaintiff, rather than Defendant, had actually committed "Defamation *per se*".   Such a brilliant finding was highlighted in this Honorable Judge Liam O'Grady's 12/08/2018 Bench Ruling.   While this Court to consider all these issues and make a well balanced final judgment, this Court is prayed not to walk away from its own bright supurb judicial wisdom shining in its 12/08/2019 Bench Ruling.

In 12/08/2018, this Honorable Court held, for the relevant part, citing Hatfill:

"Defamation requires (1) publication (2) of false information (3) concerning the plaintiff (4) that tends to defame the plaintiffs reputation. *Hatfill v. New York Times Co.,* 416 F.3d 320, 330 (4th Cir. 2005). In addition to these elements, defamation *per se* requires that the allegedly defamatory statement fall into one of four categories: *Id*

These four elements of Defamation, as cited by this Honorable Court, involve the following:

"(1) statements that "impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished," (2) statements that "impute that a person is infected with some contagious disease, where if the charge is true, it would exclude the party from society," (3) statements that "impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of duties of such an office or employment," and (4) statements that "prejudice such person in his or her profession or trade. "

Plaintiff's conspiracy and public foulplay, which he admitted in deposition, to advertise by wire fraud to induce Michillin Restaurant female owner by decoy of $100,000.00 to incriminate Defendant by public denouncement through Guo Media, with 480000 viewers

worldwide, has fully satisfied the element number 1. If that woman's sexual assault charge were proven true, Professor Xia could highly likely be criminally charged for a scarlet type criminal charges certainly with moral turpitude, and facing indictment and punishment.

Plaintiff admitted that he did spread rumors through public broadcasting mechanism circulating worldwide that Defendant Xia has such sexually transmitted disease (STD) as HPV and he has transmitted such STD to many women (through his allegedly sexual misconduct).  Plaintiff did not deny that he made such public announcement in response, followed with his later admission in the Court under oath, but argued that defended such defamatory action as flattering the Defendant with congratulations that Defendant has proven that he has completely melted into this wonderful melting pot of the United States, because allegedly more than 70% of Americans have such STD as HPVs. Therefore, to rumor Defendant to have such STD as an HPV patient is rather a appraisal than a badmouthing.   Here, Plaintiff not only defamed this Defendant, it has defamed in humiliation against the entire nation of the People of the United States as a whole by misrepresenting so-called STD "statistics". Plaintiff's such disgraceful smear not only ruining Defendant's reputation and public image, but tarnishing the image of this great nation was certainly fought back by this Honorable Court in His honor's Bench Ruling:

> "Defendant's claim of defamation *per se* comes from a statement Plaintiff made in a "video speech" that Defendant "got HPV ... and in the result, caused many women into carcinoma of the uterine cervix." Dkt. 20, ,I 219. Plaintiff argues this statement is not one that "impute[ s] that a person is infected with some contagious disease ... [which] would exclude the person from society" because HPV is an extremely common disease. While it is true that HPV is very common, HPV is a venereal disease, and venereal diseases are generally understood to fall under the contagious disease category for the purposes of defamation *per se*. *See* Restatement (Second) of Torts§ 572 (1977). This Court may then conclude that despite its ubiquity, HPV is a disease that would support a defamation *per se* claim." (Doc 38, pp 2-3)

This Honorable Court's ruling appears judicially conclusive (if Plaintiff himself admitted it): This Court found that Plaintiff admittedly defame Defendant by globally circulated smear campaign that Defendant has such sexually transmitted venereal diseases which "are generally understood to fall under the contagious disease category for the purposes

of defamation *per se.* " *(Doc 38, p3)*

The Court's 12/08/2018 Ruling and judicial holding may have left only one remaining issue to wait for the ending of the discovery: **Whether Plaintiff has defense of factual truth after Plaintiff admitted he made such public statement against the Defendant**: Any evidence shows that Defendant did have such sexually transmitted venereal disease as HPV and evidence that he had actually transmitted such "venereal disease having caused many women into carcinoma of the uterine cervix." (Here, the Latin rooted medical terminology "carcinoma of the uterine cervix" means a deadly cancer among women patients.).

Through discovery process, Plaintiff reluctantly admitted: *None.*

Plaintiff also admitted that he spread such public denouncement that Defendant Professor Xia was not a Professor, but a sexual predator to have raped a female student that led to his expulsion from the Peking University, (China's top one institute of high education. )   Plaintiff's such public badmouthing about Defendant provides an equation to defame Defendant's alleged "unfitness to perform the duties of an office or employment of profit, or lack of integrity in the discharge of the duties of such an office or employment", *another proof* of defamation *per se.*

Plaintiff, after this Honorable Judge allowed into record the Defendant's in court testimony about Plaintiff's public statement that Defendant's wife is a prostitute, it another defamation *per se.*

Finally, it is undisputed that Plaintiff's such smear campaign against Defendant using all the world's most evil tactics has caused Defendant's enormous harms from health related issues to economic losses, as the Defendant testified in the Court room under oath, and in his deposition as well, that he received psychiatric counseling, and his income from social media reception and from talk show employment were both drastically declined. Defendant's testimony was in the court records and were not stricken, while the equivalent from the Plaintiff was completely empty for Plaintiff's total failure in proving his case. Therefore, the Jury verdict is seriously flawed for the Jury was not familiar with the Virginia Common Law, no reason to request them to be an expert type.   Yet they were misled by wrongful introduction of the Defendant's later smuggled 12 trial exhibits, none of which was admissible for below-standard

20

disqualification as well as for its no foundation laid as no foundational witnesses in the courtroom on both July 1st, and July 2nd. Should this undersigned not have been improperly intercepted for unknown reasons, after winning two critical motions to turn around the pretrial situation on Defendant's side by the magistrate Judge Buchanan, this kind of mess of "Morrissy type" would never be allowed.

## VIII.  Defendant is entitled to Actual, Punitive and Incidental Damages

In this instant case, the Honorable Court grants Plaintiff's counterclaims regarding Defamation per se and Defamation awarding Counter plaintiff with such actual and punitive damages, i.e., $12million against that worldly condemned PRC spy* from the Chinese Secret police, regardless whether the actual harms that harms the counter Plaintiff's rest of life for properly sending warning signal of judicial deterance to such broadly infected espionage.

---

*It is this undersigned who tapped open the floodgate of Plaintiff's doubtless status as an active CCP spy with limitless financial resource by money laundering channel starting from his 08/26/2017 letter coupled with Trial Exhibits 1 to Trial Exhibits 16, with conscience shocking display that espionage activities in the United States by this elite communist spy from his youthhood, as well as communist hit-man ranging from abusive suits to preparation for assassination would drastically dwarfen the Wall Street Journal's featured report about him.  Unfortunately, both Mr. Ye's litigation and Dr. Waller's testimony had been suppressed and trial exhibits #1-#16, together with his sharp examination was also intercepted from public records because of Magistrate Judge Buchanan's 05/24/2019 bar for unknown motivation as well as Plaintiff's illegal PRs being later revealed by potential witness Dr. Michael Waller. A punitive damage whose amount this undersigned has never diminished is proper as deterrence to stop scandalously notorious Plaintiff's abuse of the integrity of this nation's judicial institution as well as of this nation's integrity of its territory and its treasury administration. If a retrial is permitted, and his pro hac vice status fully reinstated, the government and people of the United States would have chance to see who is Guo, what is he exactly doing here and what is his "leaders" and his "organization" doing through him in this great nation of world's leading constitutional democracy and the beacon of freedom to all oppressed people.

## IX.   Conclusion

WHEREFORE, this Amici respectfully prays that his Amicus Curaer be kindly
permitted and considered in the interests of justice.

Dated: Alexandria, VA on August 26, 2019

Respectfully submitted by,

/s/Ning Ye, Esq.
Acting as Amicus Curaer
135-11 38th Avenue, #1A
Flushing, NY 11354
Tel. 7183086626
Fax: 7182285816
Email: yeningusa@gmail.com

CERTIFICATE OF SERVICE

The undersigned certifies that on this 26th day of August, 2019, he caused to be served upon the addressee, the counsels for the Plaintiff, below a copy of the within captioned Motion together with all enclosures via USPS in a sealed envelope, by first class mail, postage prepaid, to the following addressees:

> J. David Morrissy, Esq.
> 409 7th Street, NW
> Suite 300
> Washington, DC 20004
> Counsel for the Plaintiff

> Harry Dennis, Esq.
> 2007 15th Street, Suite 201
> Arlington, VA 22201

> David Yeliang Xia (by Email)

_____
   /s/Ning Ye, Esq.

23